[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16120
Non-Argument Calendar

_____

D. C. Docket No. 07-20487-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGEL BALBUENA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 31, 2009)

Before BIRCH, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Angel Balbuena appeals his convictions and 170-

month sentences for attempting to possess cocaine with intent to distribute, possession of cocaine with intent to distribute, and possession of marijuana with intent to distribute. After review, we affirm.

## I. BACKGROUND

### A. Plea Hearing

Balbuena was indicted for: (1) attempting to possess 13 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1); (2) possession of more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 2); and (3) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 3).

In June 2007, Balbuena was released on bond. After Balbuena failed to appear for a plea hearing in October 2007, the district court issued a bench warrant for his arrest. In March 2008, Balbuena was located at the Miami-Dade County Jail and released to the U.S. Marshals Service.

At the rescheduled plea hearing, Balbuena stated that he had discussed the case with his counsel and was satisfied with counsel's representation. The district court informed Balbuena of the statutory maximum imprisonment term on each count, but did not advise him of any mandatory minimum penalties. The district

2

court also advised Balbuena that any imprisonment would be followed by "terms of supervised release" and that each count included a special assessment. Balbuena said that he understood the charges against him and the rights that he was giving up by pleading guilty and that no one was forcing him to pled guilty.

The government proffered that the evidence at trial would show that a Drug Enforcement Administration ("DEA") agent, Jalisa Monzon, and a separate confidential informant ("CI") placed several recorded phone calls to Balbuena. In these calls, Balbuena told the CI that he had gathered enough money to purchase over 10 kilograms of cocaine and arranged a transaction. Balbuena met the CI and undercover DEA Agent Monzon in a parking lot. Balbuena told the CI that he had brought $100,000 with him and that the rest of the money was at home. Balbuena asked to see the cocaine. The DEA agent showed Balbuena a large duffel bag that contained 13 brick-shaped objects wrapped in duct tape that were intended to simulate kilograms of cocaine. Balbuena was then arrested.

At the plea hearing, Balbuena's counsel disagreed with the proffered drug quantity. Balbuena's counsel stated that the agents told Balbuena that they had 10 kilograms of cocaine to sell, but that Balbuena negotiated to purchase only three kilograms. The government responded that a factual proffer of less than five kilograms would not comply with the indictment. Balbuena's counsel conferred

with Balbuena and the interpreter and then said that Balbuena was prepared to proceed with his guilty plea. Balbuena agreed with the factual proffer and pled guilty to Counts 1, 2, and 3. The district court accepted Balbuena's plea.

## B.    Presentence Investigation Report

The Presentence Investigation Report ("PSI") reproduced a written statement from Balbuena. In the statement, Balbuena said that a man named Carlos Luna was going to purchase 10 of the 13 kilograms of cocaine and that Balbuena was going to purchase the other three kilograms of cocaine. Balbuena stated that he told the CI and the DEA agent at the time of the transaction that Luna had the rest of the money for the purchase at Balbuena's house.

The PSI assigned a base offense level of 32 based on a drug quantity of 13.785 kilograms of cocaine and 776.9 grams of marijuana, pursuant to U.S.S.G. § 2D1.1(c)(4).[1] The PSI recommended a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because Balbuena failed to appear for the initial plea hearing. The PSI declined to recommend a reduction for acceptance of responsibility, in part because of Balbuena's conduct resulting in the obstruction-

---

[1]The drug quantity consisted of (1) the 13 kilograms of cocaine that Balbuena intended to purchase from the CI and Agent Monzon at the time of his arrest, (2) 23.1 grams of cocaine that were found in a search of Balbuena's vehicle, and (3) 762.5 grams of cocaine and 776.9 grams of marijuana that were found in a search of Balbuena's residence. The PSI determined that this drug quantity was equivalent to 2,758 kilograms of marijuana under the guidelines.

4

of-justice enhancement. Based on Balbuena's total offense level of 34 and criminal history category of II, the PSI calculated an advisory guidelines range of 168 to 210 months' imprisonment. The PSI outlined the following statutory penalties: (1) for Count 1, a minimum imprisonment term of 10 years and a maximum imprisonment term of life under 21 U.S.C. § 841(b)(1)(A); (2) for Count 2, a minimum imprisonment term of five years and a maximum imprisonment term of 40 years under 21 U.S.C. § 841(b)(1)(B); and (3) for Count 3, no minimum imprisonment term and a maximum imprisonment term of 5 years under 21 U.S.C. § 841(b)(1)(D).[2] The PSI also outlined the mandatory supervised release terms for each count. Balbuena objected to the PSI's drug quantity and denial of an acceptance-of-responsibility reduction.

## C.    Motion to Withdraw Guilty Plea

After the PSI was issued, the district court allowed Balbuena's counsel to

---

[2]Although the PSI correctly referred to the penalty provisions for all three counts, the government at sentencing pointed out that the indictment correctly cited 21 U.S.C. § 841(b)(1) but contained two typographical errors as to the penalty subsections in that: (1) Count 2 referred to § 841(b)(1)(A) instead of § 841(b)(1)(B), and (2) Count 3 referred to § 841(b)(1)(C) instead of § 841(b)(1)(D). The statutory minimum and maximum imprisonment terms for Counts 2 in § 841(b)(1)(B), as accurately reported in the PSI, were less than those in § 841(b)(1)(A) cited in the indictment. The same is true for Count 3 in that the statutory minimum and maximum imprisonment terms in § 841(b)(1)(D), as accurately reported in the PSI, were less than those in § 841(b)(1)(C) cited in the indictment. Thus, the district court and the parties properly proceeded under those lower statutory minimum and maximum terms for Counts 2 and 3. As to Count 1, the indictment and the PSI correctly cited the penalty provision in 21 U.S.C. § 841(b)(1)(A), which carried the highest statutory minimum and maximum term of imprisonment of the three counts of conviction.

withdraw and appointed Balbuena new counsel. Balbuena, through his new counsel, filed a motion to withdraw his guilty plea. Balbuena asserted, <u>inter alia</u>, that he did not receive close assistance of counsel because the recorded conversations between Balbuena and the CI were not translated from Spanish to English or transcribed and his prior counsel was not fluent in Spanish. Balbuena argued that his prior counsel could have provided better assistance if the recordings had been translated because Balbuena appeared to say that he only had money for three kilograms of cocaine in one of the last conversations. Balbuena also argued that his guilty plea to Count 1 was not knowing and voluntary because he intended to purchase only three kilograms of cocaine.

At a hearing on Balbuena's motion to withdraw his guilty plea, Balbuena's counsel argued that Balbuena brought enough money to the meeting with the CI and DEA Agent Monzon to purchase only three kilograms of cocaine. When the district court questioned Balbuena about his agreement with the government's factual proffer at the plea colloquy, Balbuena's counsel responded, "Judge, that is what it is." With regard to the recorded conversations between Balbuena and the CI, Balbuena's counsel noted that the Spanish words for "three" and "thirteen" sound similar. The government explained that the recorded conversations were not transcribed into English because the "case was tracking towards a guilty plea."

6

The district court orally denied Balbuena's motion to withdraw his guilty plea because Balbuena (1) was in the best position to advise his counsel about the content of the recorded phone conversations, (2) had time to confer with counsel and the interpreter during the plea hearing whenever he had questions, and (3) said that he agreed with the factual proffer, that he was pleading guilty because it was in his best interest, and that he was satisfied with counsel's representation.

## D.    Sentencing

At sentencing, the government presented testimony from DEA Agent Monzon, who was the main agent on Balbuena's case and was the undercover agent present at the transaction. Monzon testified that she is fluent in Spanish and that she listened to each of the phone calls between Balbuena and the CI, which were conducted in Spanish. Monzon also testified that she transcribed the recordings herself but that there was no official transcription of them. Monzon testified that the drug transaction was negotiated over the course of several phone conversations and that the drug quantity discussed ranged from 10 to 15 kilograms of cocaine. Monzon further testified that, during a recorded conversation with the CI on the date of his arrest, Balbuena said, "I have the money for 13," and that he was referring to the kilograms of cocaine he had arranged to purchase. Monzon conceded that Balbuena did not speak "proper Castillian Spanish" but testified that

7

she was certain that Balbuena had asked for 13 kilograms of cocaine. Monzon acknowledged that Balbuena said during one conversation that he had money only for three kilograms but testified that the CI, at the DEA's direction, told Balbuena that he would not sell him only three kilograms.

Monzon also testified that the arrangement was for Balbuena to bring all of the money for the transaction to the meeting place. When Balbuena arrived, he told Monzon and the CI that he had brought $100,000 with him and that they would follow him to Balbuena's residence to get the rest of the money for the transaction from Carlos Luna. Agents later counted the money that Balbuena brought with him and discovered that it was only approximately $54,000.

Balbuena testified that, on the day of the arranged transaction, he told the CI that he had the money for three kilograms and that he either would buy three kilograms or he would leave. Balbuena denied that he intended to purchase cocaine for Luna, but conceded that he had said so during debriefing. Balbuena testified that he had lied in an attempt to lessen his sentence.

The district court found that Balbuena's version of events was not credible. The district court found that the transcripts indicated that Balbuena requested between 10 to 15 kilograms of cocaine at various times. The district court noted that the CI told Balbuena consistently that he would not sell a lesser amount, but

8

Balbuena continued with the purchase nevertheless. Based on the recorded telephone conversations and Agent Monzon's testimony, the district court found that Balbuena intended to take his three kilograms of cocaine and then go elsewhere to get additional money to purchase the other 10 kilograms. Thus, the district court found that the government met its burden of proving the drug quantity by a preponderance of the evidence.

With regard to the guidelines calculations, Balbuena argued that it was impermissible double-counting to rely on his failure to appear for the initial plea hearing in applying the obstruction-of-justice enhancement and denying the acceptance-of-responsibility reduction. The district court overruled his objection and adopted the advisory guidelines range of 168 to 210 months' imprisonment. The district court sentenced Balbuena to 170 months' imprisonment each on Counts 1 and 2 and 60 months' imprisonment on Count 3, all to run concurrently, and five years of supervised release. Balbuena appealed.

## II. DISCUSSION

### A. Withdrawal of Guilty Plea

Balbuena argues that the district court erred in denying his motion to withdraw his guilty plea for two reasons.[3] First, Balbuena argues that the district

---

[3]This Court reviews the denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006).

court failed to advise him of the statutory mandatory minimum penalties that he faced at the plea hearing. Because Balbuena did not raise any objections in the district court regarding the adequacy of the plea colloquy, we review this issue only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).[4]

Before accepting a guilty plea, "the court must inform the defendant of, and determine that the defendants understands . . . any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(I). The three core principles underlying Rule 11's requirements are that: "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." United States v. Siegel, 102 F.3d 477, 481 (11th Cir. 1996).

"[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004). When a defendant is not informed of a sentencing consequence during the

---

[4]Plain error requires the defendant to show: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Rodriguez, 398 F.3d at 1298.

plea colloquy, but is informed by the PSI and does not object during the sentencing hearing, this Court may infer from the defendant's own conduct that his substantial rights have not been violated. See United States v. Bejarano, 249 F.3d 1304, 1306-07 (11th Cir. 2001); United States v. Carey, 884 F.2d 547, 548-49 (11th Cir. 1989).

Although the district court did not advise Balbuena of the mandatory minimum penalties at the plea hearing, the PSI outlined the mandatory minimum imprisonment and supervised release terms on each count and the potential fines Balbuena faced. Balbuena received the PSI before filing his motion to withdraw his guilty plea, but did not reference the plea-colloquy omission in his motion. In addition, at sentencing, Balbuena's counsel stated, "I understand that the Court's hands are tied as far as the minimum-mandatory sentence of ten years because of the number of kilos that he pled guilty to, which is over five kilos." In the district court, Balbuena did not object or move to withdraw his guilty plea based on the mandatory minimum penalties at this time, either. And Balbuena's sentence of 170 months' imprisonment was within the advisory guidelines range of 168 to 210 months' imprisonment and was not derived from a mandatory minimum. Thus, Balbuena has failed to show plain error.

Next, Balbuena argues that the district court erred in denying his motion to withdraw his guilty plea because his original counsel did not know the contents of

the recorded phone conversations between Balbuena and the CI. After the district court has accepted a plea and before sentencing, a defendant may withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). When deciding whether a defendant has shown a fair and just reason for withdrawal, the district court evaluates the totality of the circumstances, including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." United States v. Buckles, 843 F.2d 469, 471-72 (11th Cir. 1988) (citations omitted).

We see no error in this regard either. As to whether Balbuena received close assistance of counsel, Balbuena consulted with his counsel through an interpreter at the plea hearing after Balbuena questioned the drug quantity in the government's factual proffer. As a party to the recorded conversations, Balbuena himself could have advised his counsel regarding the substance of the conversations with the CI and told his counsel that he would not admit that he agreed to purchase 13 kilograms of cocaine. Instead, after consulting with counsel, Balbuena stated that he accepted the government's factual proffer, which expressly referenced 13 kilograms of cocaine, and pled guilty. Balbuena also told the district court that he

12

was satisfied with his lawyer's representation. The district court was permitted to rely on Balbuena's representations at the plea hearing. See United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true.").

As to whether Balbuena's plea was knowing and voluntary, Balbuena stated that he understood the charges against him and the rights he was waiving, that he was not being pressured to plead guilty, and that he accepted the government's factual basis. Because these first two factors weigh strongly in favor of the district court's decision not to allow Balbuena to withdraw his plea, we conclude that the district court did not err and need not consider the other two factors. See United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987).

For these reasons, we affirm the district court's denial of Balbuena's motion to withdraw his guilty plea.

## B. Impermissible Double-Counting

Next, Balbuena argues that it was impermissible double-counting for the district court both to increase his offense level for obstruction of justice and to deny him an acceptance-of-responsibility reduction to that offense level based on his failure to appear at the initial plea hearing.[5]

---

[5]This Court reviews claims of double counting de novo. United States v. Matos-Rodriguez, 188 F.3d 1300, 1310 (11th Cir. 1999).

13

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Matos-Rodriguez, 188 F.3d 1300, 1309 (11th Cir. 1999) (quotation marks omitted). It is presumed that the Sentencing Commission intended to apply separate guideline sections cumulatively unless there are specific directions otherwise. United States v. Stevenson, 68 F.3d 1292, 1294 (11th Cir. 1995).

A two-level obstruction-of-justice increase applies where "the defendant willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and the obstructive conduct related to the defendant's offense of conviction. U.S.S.G. § 3C1.1. The guidelines list "willfully failing to appear, as ordered, for a judicial proceeding" as an example of conduct to which the obstruction-of-justice enhancement applies. Id. § 3C1.1 cmt. n.4(e). In considering whether an acceptance-of-responsibility reduction is appropriate, "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction . . . will constitute significant evidence of acceptance of responsibility." Id. § 3E1.1 cmt. n.3 (emphasis added). Conduct

resulting in an obstruction-of-justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Id. § 3E1.1 cmt. n.4.

We reject Balbuena's double-counting claim. The guidelines explicitly contemplate that conduct resulting in an obstruction-of-justice enhancement may warrant a denial of an acceptance-of-responsibility reduction. U.S.S.G. § 3E1.1 cmt. n.4. Thus, it was permissible for the district court to consider Balbuena's failure to appear for his plea hearing in both guidelines calculations. Furthermore, the district court also properly determined that Balbuena's challenge to the drug quantity after his guilty plea and admission to the government's factual proffer was incompatible with a true acceptance of responsibility. Thus, we see no error in the district court applying the two guidelines sections cumulatively.

In conclusion, we affirm Balbuena's convictions and sentences.

**AFFIRMED.**