[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15717
Non-Argument Calendar
_____

D.C. Docket Nos. 1:11-cv-21168-MGC,
1:07-cr-20487-MGC-1

ANGEL BALBUENA,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 11, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Angel Balbuena, a federal prisoner proceeding pro se, appeals the district

court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence.  After review,

we affirm.

## I.  UNDERLYING CRIMINAL PROCEEDINGS

### A.    Indictment & October 2007 Change-of-Plea Hearing

In June 2007, Balbuena, a Cuban national, was indicted for: (1) attempting to possess 13 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1); (2) possession of more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 2); and (3) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 3).

Assistant Federal Public Defender Vincent Farina was appointed to represent Balbuena.  Following his initial appearance, Balbuena was released on bond. When Balbuena failed to appear for a scheduled change-of-plea hearing in October 2007, the district court issued a bench warrant for his arrest.  In March 2008, Balbuena was located and remanded to the custody of the U.S. Marshals Service.

### B.    May 2008 Change-of-Plea Hearing

A rescheduled change-of-plea hearing was held in May 2008.  At the start of the hearing, the district court asked the parties whether they were ready to proceed. Attorney Farina responded "not today," and indicated that there was some uncertainty about whether the government was planning to charge Balbuena for

2

bail jumping, and whether that charge would be filed in a superseding or separate indictment.

The government admitted that a final decision had not been made regarding whether to charge Balbuena with bail jumping.  But, the government noted that regardless of what the ultimate decision turned out to be, Balbuena could nevertheless choose to plead guilty in full to the current indictment.

Farina requested an opportunity to speak with Balbuena, which the district court granted.  After consulting with Balbuena, Farina informed the district court that Balbuena was prepared to move forward with his guilty plea.

The district court, through a Spanish interpreter, placed Balbuena under oath and warned Balbuena that he was subject to perjury charges for lying.  The district court inquired whether Balbuena was a U.S. citizen, and Balbuena admitted that he was a Cuban citizen.  Balbuena stated that he had discussed the case with his attorney and was satisfied with his attorney's representation.  Balbuena affirmed that he understood the charges against him, and that no one was threatening him or forcing him to plead guilty.

The government proffered that the evidence at trial would show that an undercover Drug Enforcement Administration ("DEA") agent (later identified as Jalisa Monzon) and a separate confidential informant ("CI") placed several recorded phone calls to Balbuena.  In these calls, Balbuena (1) told the CI that he

3

had gathered enough money to purchase over 10 kilograms of cocaine, and (2) set up a meeting with the CI for the purpose of consummating a cocaine sale.

On June 6, 2007, Balbuena met the CI and undercover DEA Agent Monzon in a parking lot.  Balbuena told the CI that he had brought $100,000 with him and that the rest of the money was at Balbuena's home.  Balbuena asked to see the cocaine.  The CI and Agent Monzon showed Balbuena a large duffel bag that contained 13 brick-shaped objects wrapped in duct tape, intended to simulate kilograms of cocaine.  Balbuena was then arrested.

The district court asked Balbuena whether he agreed with the government's proffer.  Balbuena responded "[w]ell, there is one thing there that I did not do." The following discussion then occurred about the quantity of cocaine at issue in Count 1, but Balbuena ultimately agreed to the government's proffer, as follows:

THE COURT:    What is that, sir?

[FARINA]:    Your Honor, I am concerned about the quantity of drugs that was actually negotiated.  It was three kilos instead of ten. The agents told them they had ten kilos if he wanted to buy them.  He only brought in three.  That is a discrepancy in the quantity.

[GOVERNMENT]:. . . I can change the proffer to over five kilograms of cocaine.  Anything beyond that, I don't believe is a proffer that complies with what is charged in the indictment

THE COURT:    That's what he is charged with in Count 2.

[FARINA]:    May I have one moment, Your Honor?

4

THE COURT:    Yes.

[FARINA]:    May I have one moment with the interpreter, Judge?

THE COURT:    You may.

[FARINA]:    We are prepared to go forward, Your Honor. Thank you.

THE COURT:    Sir, do you accept the factual basis as read by the prosecutor?

[BALBUENA]:    Yes.

After Balbuena explicitly agreed with the government's factual proffer, the district court found that Balbuena (1) was "fully competent and capable of entering an informed plea" and (2) was "aware of the nature of the charges and the consequences of the plea."  The district court further found that Balbuena's "plea of guilty [was] knowing and voluntary, supported by an independent basis in fact containing each of the essential elements of the offense."  The district court accepted Balbuena's guilty plea and adjudicated him guilty of Counts 1, 2, and 3.

## C.    Balbuena's Presentence Investigation Report

After Balbuena pled guilty, a U.S. probation officer prepared a presentence investigation report ("PSI").  Balbuena provided to the probation officer a typewritten statement, in which he said that he

> met with a confidential informant and an undercover officer to conduct a purported sale of 13 kilograms of cocaine.  Previously I had negotiated the price of $17,500.00 per kilogram.  Another individual

5

that I was working with by the name of Carlos Luna was going to purchase 10 of the kilos and I was going to purchase 3. . . . I met with [the CI and the undercover DEA Agent].  I told them that Carlos had the rest of the money with him at my house.

Farina filed written objections to the PSI, including an objection to the 13 kilograms of cocaine for which the PSI held Balbuena accountable.  Specifically, Farina argued that while there was discussion between Balbuena and the CI of a quantity of cocaine in excess of 10 kilograms, (1) that discussion was crafted and supported by the CI; and (2) Balbuena had really wanted to purchase only 3 kilograms of cocaine, as evidenced by the amount of money he brought to the meeting with the CI.

## D.    Farina's Withdrawal

Less than a week after Farina filed objections to the PSI, Balbuena sent a pro se letter, written in Spanish, to the district court.   In this letter, Balbuena stated that he had been poorly represented by Farina, did not receive sufficient advice from Farina, and wished to withdraw his plea of guilty to the offense of possessing 13 kilograms of cocaine, which he denied committing.

In July 2008, the district court held a hearing about Balbuena's dissatisfaction with Farina and his desire to withdraw his guilty plea.  At the hearing, Farina made an oral motion to withdraw and conceded that he should have moved to withdraw several months earlier when a potential attorney-client conflict arose at Balbuena's May 2008 change-of-plea hearing.  Specifically, this

6

prospective conflict arose out of Farina's being a potential grand jury witness in the event that the government sought to indict Balbuena for bail jumping. Farina explained that as Balbuena's attorney, he could be called to testify that he had affirmatively advised Balbuena about Balbuena's obligation to appear for the change-of-plea hearing.

Farina reminded the district court that at the beginning of the May 2008 change-of-plea hearing, Farina had asked the district court for a few minutes to speak with Balbuena about the possibility of the government filing a separate or superseding indictment that contained a bail jumping charge. The district court granted Farina's request, and Farina had consulted with Balbuena for several minutes. After this consultation, Farina told the district court that Balbuena was ready to plead, and the change-of-plea hearing continued. Farina told the district court that during his consultation with Balbuena, he thought that "under the circumstances [Balbuena] felt a little bit rushed and pressured and he did go through the plea colloquy."

In response to Farina's admissions, the district court observed that Balbuena, as early as October 2007 (when the first change-of-plea hearing was scheduled), was prepared to change his plea to guilty. The district court noted Balbuena "was supposed to plead guilty on the day that he didn't show up. It's not like you [Farina] rushed him into taking a plea" in May 2008.

7

The government and Farina observed that the matter of an attorney-client conflict went beyond the prospect of Farina becoming a government witness against his own client, in that Balbuena also had sent the district court the pro se letter expressing his dissatisfaction with Farina and his desire to withdraw his guilty plea. The district court granted Farina's motion to withdraw and appointed Balbuena new counsel.

### E.    Motion to Withdraw Guilty Plea

Through his newly appointed counsel, Israel Jose Encinosa, Balbuena filed a motion to withdraw his guilty plea because it was not knowingly and voluntarily entered. Balbuena's motion asserted, inter alia, that he did not receive close assistance of counsel because the recorded conversations between Balbuena and the CI were not translated from Spanish to English or transcribed. Farina was not fluent in Spanish. Balbuena argued that Farina's lack of Spanish fluency was problematic because Balbuena had actually said that he only had money for 3 kilograms of cocaine, rather than 13 kilograms, in one of the last recorded conversations with the CI.

Following the government's response, the district court held a hearing in August 2008 on Balbuena's motion to withdraw his guilty plea. At this hearing, Attorney Encinosa again emphasized that Balbuena brought only enough money to the meeting with the CI and undercover DEA Agent Monzon to purchase 3

8

kilograms of cocaine.  With regard to the recorded conversations between Balbuena and the CI, Balbuena's counsel noted that the Spanish words for "three" and "thirteen" sounded similar.[1]  The district court questioned Encinosa about Balbuena's explicit agreement with the government's factual proffer at the change-of-plea hearing, which agreement Balbuena made after conferring with Farina and an interpreter.  Encinosa responded, "Judge, that is what it is. . . . But you are correct. All that happened during the plea colloquy I am sure."

The district court orally denied Balbuena's motion to withdraw his guilty plea because Balbuena (1) was in the best position to advise Farina about the content of the recorded phone conversations, and plainly had advised Farina well enough for Farina to raise a specific objection to drug quantity at the change-of-plea hearing; (2) was granted several opportunities during the change-of-plea hearing to confer with Farina and the interpreter whenever he had questions; and (3) stated that he agreed with the factual proffer, he was pleading guilty because it was in his best interest, and he was satisfied with Farina's representation.

## F.    Sentencing Hearing

At Balbuena's sentencing hearing in October 2008, undercover DEA Agent Monzon testified that she was fluent in Spanish and was responsible for creating

---

[1]The government explained that the recorded conversations between Balbuena and the CI were not transcribed or translated into English at the time of the change-of-plea hearing because the "case was tracking towards a guilty plea."  As discussed further infra, the conversations were ultimately transcribed and translated into English because the English-language transcripts were introduced at Balbuena's sentencing hearing.

the English transcripts of the recorded phone conversations between Balbuena and the CI. Agent Monzon described the phone conversations, which were negotiations for Balbuena to purchase between 13 and 15 kilograms of cocaine at a price of $17,500 per kilogram, and the government introduced into evidence transcripts and audio recordings of these conversations. In the final phone conversation between Balbuena and the CI, Balbuena stated that he had money for "13" and the CI responded "For 13, for 13. Perfect. It's what I have on me. You told me that and I got it." When Balbuena arrived to consummate the sale, however, he stated that he only had $100,000 in cash on him, and that the money for the remainder of the cocaine was stored at his home. After arresting Balbuena, law enforcement officers counted the money Balbuena had brought to the transaction and determined that it was only approximately $54,000, not $100,000.

On cross-examination, Agent Monzon conceded that Balbuena did not speak "proper Castillian Spanish." However, she disagreed that the Spanish word for "three" could be mispronounced and interpreted as the Spanish word for "thirteen." Further, she was certain Balbuena had ultimately asked for 13 kilograms of cocaine in the last conversation with the CI, but conceded that Balbuena had requested different amounts from conversation to conversation.

Balbuena testified that he decided to tell the purported seller that he had the money to buy the quantity the seller had available, but he always intended to

purchase only 3 kilograms.  Balbuena stated that the seller would not agree to sell the smaller amount, however.  On cross-examination, Balbuena denied that he intended to purchase cocaine for someone else.  Balbuena admitted that in the debriefing he told a case agent that he did intend to bring some of the cocaine to someone named "Luna."  Balbuena explained that he had lied to the agent in an attempt to lessen his sentence.  On re-direct, Balbuena again testified that the seller never agreed to sell less than 10 kilograms, and Balbuena agreed to the seller's proposal even though he wanted to purchase a lesser amount.

The district court found that the government had proved, by a preponderance of the evidence, that Balbuena was accountable for 13.785 kilograms of cocaine, as stated in the PSI.  Balbuena's objection to the drug quantity was thus overruled.

Balbuena then argued that relying on his bail jumping for both enhancement for obstruction of justice and denial of acceptance of responsibility was impermissible double counting.  Balbuena noted that he potentially faced additional charges for the bail jumping.  The district court implicitly ruled that there was no impermissible double counting regarding the obstruction enhancement coupled with the denial of a reduction for acceptance of responsibility, and explicitly ruled that the potential for future charges was not double counting.

11

The district court then stated that it had considered the 18 U.S.C. § 3553(a) sentencing factors, which included an advisory guidelines range of 168 to 210 months' imprisonment.  The district court sentenced Balbuena to 170 months' imprisonment on Counts 1 and 2 and 60 months on Count 3, with the sentences to run concurrently.   In explaining its reasons for the sentence imposed, the district court noted Balbuena's bail jumping, his inability to give "a consistent version of the events that comports with anybody else's reality" or accept responsibility for his offenses, and that "the guideline range in this case adequately reflects the factors in [§] 3553."

## G.    Direct Appeal

Balbuena timely appealed his convictions and sentences to this Court.  On appeal, Balbuena argued, inter alia, that the district court erred in denying his motion to withdraw his guilty plea because his original counsel, Farina, did not know the contents of the recorded phone conversations between Balbuena and the CI.[2]  This Court affirmed Balbuena's convictions and sentences.  See United States v. Balbuena, 343 F. App'x 510 (11th Cir. 2009), cert. denied, 130 S. Ct. 2341 (2010).  In addressing Balbuena's argument that he should have been permitted to withdraw his guilty plea, this Court stated the following:

---

[2]In his direct appeal, Balbuena also raised arguments concerning (1) the district court's failure to advise him of the statutory mandatory minimum penalties during his change-of-plea hearing; and (2) whether the district court erred by both increasing his offense level for obstruction of justice and denying him an acceptance-of-responsibility reduction based on his bail jumping.  United States v. Balbuena, 343 F. App'x 510, 515–17 (11th Cir. 2009).

After the district court has accepted a plea and before sentencing, a defendant may withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  When deciding whether a defendant has shown a fair and just reason for withdrawal, the district court evaluates the totality of the circumstances, including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea."  United States v. Buckles, 843 F.2d 469, 471–72 (11th Cir. 1988) (citations omitted).
. . . .

As to whether Balbuena received close assistance of counsel, Balbuena consulted with his counsel through an interpreter at the plea hearing after Balbuena questioned the drug quantity in the government's factual proffer.  As a party to the recorded conversations, Balbuena himself could have advised his counsel regarding the substance of the conversations with the CI and told his counsel that he would not admit that he agreed to purchase 13 kilograms of cocaine.  Instead, after consulting with counsel, Balbuena stated that he accepted the government's factual proffer, which expressly referenced 13 kilograms of cocaine, and pled guilty. Balbuena also told the district court that he was satisfied with his lawyer's representation.  The district court was permitted to rely on Balbuena's representations at the plea hearing.  See United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true.").

As to whether Balbuena's plea was knowing and voluntary, Balbuena stated that he understood the charges against him and the rights he was waiving, that he was not being pressured to plead guilty, and that he accepted the government's factual basis.  Because these first two factors weigh strongly in favor of the district court's decision not to allow Balbuena to withdraw his plea, we conclude that the district court did not err and need not consider the other two factors.

Balbuena, 343 F. App'x at 516.

13

## II.  SECTION 2255 MOTION

In April 2011, Balbuena filed a pro se § 2255 motion to vacate his sentence. In this motion, Balbuena alleged five grounds for relief, including that his counsel rendered ineffective assistance by (1) failing to ensure that Balbuena understood the nature and consequences of his guilty plea; and (2) failing to argue at sentencing that Balbuena merited a downward variance based on the more onerous conditions that aliens face in federal prison compared to United States citizens.

As to his ineffective-assistance claim regarding his guilty plea, Balbuena argued that his guilty plea was unknowing and involuntary because Attorney Farina failed to inform him of the elements of the offense, explain how his conduct satisfied the elements, or explain any of the constitutional rights that would be waived by a guilty plea.  Balbuena further argued that because of Farina's lack of Spanish-language ability, Farina had (1) failed to investigate the case adequately, and (2) "gravely misled [Balbuena] about the nature of the charges he faced," presumably by telling him he would plead guilty to 3 kilograms when he was actually pleading guilty to 13 kilograms.  Balbuena asserted that he suffered prejudice as a result of Farina's ineffective assistance because, had Farina explained the elements of the offense, the law in relation to the facts of his case, or the waived constitutional rights, Balbuena would not have pleaded guilty.

14

As to his ineffective-assistance claim regarding his sentence, Balbuena argued that Attorney Encinosa was ineffective at sentencing for failing to argue that he merited a downward variance on the basis that aliens faced certain federal prison conditions that United States citizens did not face.  These conditions included (1) the inability to participate in a substance abuse program, thereby missing out on a potential sentence reduction; (2) the inability to receive a halfway-house placement; and (3) placement in a higher-security prison.  Balbuena argued that he suffered prejudice from Encinosa's deficient performance because he would have received a lower sentence had Encinosa raised the issue before the district court at sentencing.

Balbuena's § 2255 motion was referred to a magistrate judge.  Following the government's response, the magistrate judge issued a report recommending denial of Balbuena's motion in full.  In relevant part, the magistrate judge first determined that Balbuena's ineffective-assistance-of-counsel claim based on Farina's guilty plea advice was "clearly without merit," as the record did not show that if Balbuena had been advised differently, he would have proceeded to trial rather than pleading guilty.

The magistrate judge found, based on the transcript of the plea colloquy, that Balbuena's guilty plea was knowing and voluntary, and that Balbuena had "full knowledge of the elements of the offense to which he was pleading guilty, and of

the evidence proffered by the government which it was prepared to prove" if Balbuena chose to proceed to trial. Balbuena's "bare allegation[s]" to the contrary were "wholly incredible" in light of the record, which demonstrated that he consulted with Farina and made "solemn declarations in open court" that his plea was knowing and voluntary. The magistrate judge also found that Farina had not provided ineffective assistance in advising Balbuena about the consequences of his guilty plea, noting that, had Balbuena proceeded to trial, he risked receiving a longer sentence, as compared to the low-end guidelines range sentence the district court imposed after Balbuena's guilty plea.

The magistrate judge then considered Balbuena's ineffective-assistance claim based on Encinosa's failure to argue for a variance based on Balbuena's status as an alien. Construing Balbuena's pro se § 2255 motion in literal terms as arguing that Encinosa was ineffective for failing to request a below-guideline sentence on the basis of Balbuena's status as an alien, the magistrate judge found no ineffectiveness because the sentencing court had indicated that a within-guideline sentence was necessary, and thus "would not have been disposed to depart downward and impose a below-the-guidelines sentence." The magistrate judge also noted that this Court has held that a defendant's status as an alien generally will not support a sentence reduction, and, therefore, Encinosa's decision to forego the argument at sentencing was "clearly a strategic decision of the kind

16

for which counsel cannot under the circumstances be deemed ineffective." The magistrate judge thus recommended that the district court deny Balbuena's § 2255 motion to vacate as to these claims.

Balbuena filed objections to the report, asserting that the Spanish-language letter he sent to the district court, in which he asked to withdraw his plea because of his dissatisfaction with Farina's representation, constituted evidence of a breakdown in communication between Farina and him and demonstrated that he would have proceeded to trial had Farina properly represented him. In addition, Balbuena noted that he maintained throughout the underlying criminal proceedings that he intended to purchase only 3 kilograms of cocaine, another indicator that Farina provided ineffective assistance. Balbuena also objected to the magistrate judge's recommendation that Encinosa was not ineffective for failing to raise the issue of Balbuena's alien status at sentencing, asserting generally that Encinosa had an obligation to do so.

After considering Balbuena's objections and conducting a de novo review of the record, the district court adopted the magistrate judge's report and denied Balbuena's § 2255 motion to vacate. The district court granted Balbuena a certificate of appealability as to his two ineffective-assistance claims discussed above.

17

### III.  DISCUSSION

In a § 2255 proceeding, we review a district court's legal conclusions <u>de novo</u> and its factual findings for clear error.  <u>Devine v. United States</u>, 520 F.3d 1286, 1287 (11th Cir. 2008).

### A.      Ineffective Assistance of Counsel: Guilty Plea

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

Under the first prong, the defendant must establish that counsel's performance was deficient by demonstrating by a preponderance of the evidence "that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance."  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313–14 (11th Cir. 2000) (en banc) (citation and internal quotation marks omitted).  In deciding whether counsel's performance was deficient, our judicial scrutiny is "highly deferential" and requires us to "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."  <u>Id.</u> at 1314 (internal quotation marks omitted).  This Court conducts an <u>objective</u> inquiry into the reasonableness of counsel's performance, such that a defendant "must

18

establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

Under the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To establish prejudice in the context of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

Here, the magistrate judge did not err in finding that Balbuena had failed to show that Farina's performance was constitutionally deficient. At Balbuena's May 2008 change-of-plea hearing, Balbuena affirmed that his plea was knowing and voluntary, that he was satisfied with Farina's representation, and that he understood the charges against him. In light of these statements, and other evidence of record that we discuss below, Balbuena's claim that his plea was unknowing and involuntary due to Farina's alleged misadvice fails for two reasons.

First, at the change-of-plea hearing, the government's factual proffer clearly stated that the amount of cocaine at issue in Count 1 was more than 10 kilograms. When Balbuena personally raised a general objection to the proffer, Farina then

19

stepped in and specifically objected to the cocaine quantity, contending that it should be 3 kilograms instead of 13. Farina stated "Your Honor, I am concerned about the quantity of drugs that was actually negotiated. It was three kilos instead of ten. The agents told them they had ten kilos if he wanted to buy them. He only brought in three. That is a discrepancy in the quantity." In addition, after Balbuena's conference with Farina and the interpreter during the change-of-plea hearing, and without any change in the government's proffer (a proffer to which Balbuena himself, rather than his counsel, had raised the initial objection), Balbuena explicitly agreed to proceed with his guilty plea as to Count 1. Balbuena's and Farina's separate objections, and Farina's subsequent discussion with Balbuena, indicate that Farina was aware of the issue regarding the amount of cocaine. Thus, the record refutes Balbuena's assertion that because of Farina's performance, Balbuena did not know he was pleading guilty to attempting to possess 13 kilograms, instead of 3 kilograms, of cocaine.

Second, even if we credit Balbuena's claim about Farina's lack of Spanish-language abilities, the change-of-plea hearing transcript indicates that Farina asked for an interpreter and conferred with Balbuena during the hearing while accompanied by that interpreter. Farina's lack of Spanish-language ability, therefore, would not have impeded his ability to communicate the elements of the offense to Balbuena. Any failure on the part of the interpreter that led to Balbuena

20

misunderstanding the amount of cocaine at issue has no bearing on the question of whether "no competent counsel would have taken the action that [Farina] did." Chandler, 218 F.3d at 1315.

While Farina may have withdrawn in part because of Balbuena's allegations of ineffective assistance and acknowledged that Balbuena might have felt "rushed and pressured" to enter his guilty plea, it is Balbuena who carries the burden of showing Farina's deficient performance under an objective standard, which he failed to do.  See Chandler, 218 F.3d at 1315.  Accordingly, the district court did not err in concluding that Balbuena failed to establish that Farina rendered deficient performance in advising Balbuena concerning the Count 1 offense to which Balbuena pleaded guilty.  In light of our conclusion that Balbuena has not shown that Farina performed deficiently, we need not consider the prejudice prong of the Strickland test.  See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

## B.    Ineffective Assistance of Counsel: Sentencing

At Balbuena's sentencing hearing, Attorney Encinosa raised several arguments in favor of a shorter sentence, including that (1) Balbuena's offense level should be set by holding him accountable for 3, rather than 13, kilograms of cocaine, thus resulting in a lower advisory sentencing guidelines range, and (2) by denying Balbuena an offense level reduction for acceptance of responsibility, and imposing an increase for obstruction of justice, Balbuena was being punished twice

for the same bail-jumping conduct.  After the district court rejected both of these arguments and set the advisory guidelines range at 168 to 210 months, Encinosa asked that the district court impose a sentence at "the bottom of the guidelines," and the district court complied with this request by imposing a total 170-month sentence.

In announcing its sentencing decision, the district court stressed Balbuena's unwillingness to "accept responsibility for what he has done and move on," and that the advisory guidelines range "in this case adequately reflect[s] the factors in [§] 3553."  The district court also noted that in light of the sentencing presentations by both parties, it "plan[ned] to sentence the defendant within the advisory guideline range."

With this background, we need not address <u>Strickland</u>'s performance prong because we conclude that Balbuena has not met his burden of demonstrating that he was prejudiced by Encinosa's failure to raise the precise variance argument that Balbuena now advocates.  Balbuena makes only a blanket assertion that his alienage precludes his participation in certain prison programs and therefore results in his serving a longer and harsher prison sentence.  He does not and cannot show (as required by <u>Strickland</u>) that there is a reasonable probability that, but for Encinosa's failure to raise an argument for a variance on this ground, the district court would actually have imposed a shorter sentence.  <u>See</u> <u>Strickland</u>, 466 U.S. at

22

694, 104 S. Ct. at 2068 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

In light of the statements made by the district court judge, who presided over the entirety of the criminal proceedings and was aware of Balbuena's alienage (as well as his bail jumping) from the change-of-plea hearing, and considering the other non-frivolous arguments Encinosa made on Balbuena's behalf, there is no indication from the record that the district court was inclined to accept Balbuena's proposed argument and vary downward from the advisory guidelines range due to Balbuena's alienage issue. Rather, the district court explicitly stated that it found that the advisory guidelines range "adequately reflect[ed] the factors in [§] 3553" and expressed its intention to sentence Balbuena within this range. Further, when explaining its sentencing decision, the district court focused heavily on Balbuena's unwillingness to accept responsibility for his offenses, Balbuena's constantly changing story, and the fact that Balbuena had failed to appear for his originally scheduled change-of-plea hearing, factors completely unrelated to Balbuena's alienage.

Thus, Balbuena has not carried his burden of showing prejudice, i.e., that there is "a reasonable probability that, but for" Encinosa's failure to argue for an alienage variance, the district court would have imposed a shorter sentence. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. As noted by the magistrate judge,

23

in light of this record, "[i]t is apparent that the argument raised here . . . is one that would have had little or no chance of success if counsel had raised it by motion or objection during the penalty phase of Balbuena's case."[3]

## IV.  CONCLUSION

In light of the foregoing, we affirm the district court's denial of Balbuena's § 2255 motion to vacate his sentence.

**AFFIRMED.**

---

[3]To the extent that Balbuena raises additional claims and arguments that are outside of the scope of the certificate of appealability granted by the district court, we decline to expand the certificate of appealability or consider those claims in this appeal.  See Hodges v. Att'y Gen., 506 F.3d 1337, 1340–41 (11th Cir. 2007) (declining to address issues raised during briefing that were not included in the certificate of appealability).